UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| | ) | |
| MARK MANNING, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:15-cv-11936 |
| | ) | |
| HEALTHX, INC. and FRONTIER CAPITAL, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**OPPOSITION TO FRONTIER CAPITAL LLC'S MOTION TO DISMISS**

Defendant Frontier Capital ("Frontier") asks this Court to make a factual determination regarding the role that its executive played in recruiting and hiring Mark Manning, as well as the corporate relationship between the defendant entities, all before any discovery has taken place. The complaint sets forth allegations that Frontier and Healthx worked together to recruit and hire the plaintiff for the top executive position at Healthx.  Those allegations are supported by the ambiguous manner in which Frontier's Managing Partner communicated with Manning throughout the hiring process, such that it is unclear whether Frontier or Healthx—or both—had the authority to select Healthx's CEO, negotiate his employment agreement, terminate his contract after only four days, and, ultimately, decide not to comply with the severance provision of the employment agreement.  Because Frontier's role in hiring and firing Manning is a factual issue in need of discovery, it is premature to dismiss the complaint against Frontier based on Frontier's view of the facts.

In further support of his opposition to Frontier's motion to dismiss, Manning respectfully states as follows:

I.      THE COMPLAINT CONTAINS ALLEGATIONS THAT FRONTIER MADE ENFORCEABLE
        PROMISES TO MANNING.

As set forth in the complaint, when Manning was recruited to serve as President and

Chief Executive Officer of Healthx beginning in August 2013, he was contacted by

representatives of both Healthx and Frontier.  Complaint, ¶ 7.  Those representatives included

Richard Maclean, the Managing Partner of Frontier, who eventually sent Manning a final offer

letter on December 13, 2013, attaching the Employment Agreement.  *Id.*, ¶ 12.  In between, the

complaint alleges that "Frontier and Healthx" sent Manning multiple draft agreements,

negotiated their terms, and provided Manning with analysis of the long-term value of his

compensation package.  *Id.*, ¶¶ 8-9.  The complaint further alleges that Manning acted in reliance

on the offer letter from Maclean, the employment agreement, and the equity analysis provided to

him by Frontier and Healthx in resigning his existing position, accepting the employment offer,

and selling property in Massachusetts in anticipation of moving to Indianapolis to work for

Healthx.  Complaint, ¶¶ 13-15.

If accepted as true for the purposes of this motion—as Frontier acknowledges they must

be—these allegations amount to a promise by Frontier that Manning would be retained as CEO

of Healthx on the terms negotiated and agreed upon, which induced Manning to resign his

existing position (among other things).  To the extent that Frontier broke that promise by

terminating Manning improperly, based on an improper determination that there was cause for

termination, and then denying Manning the severance payment that he was due, then justice

requires the enforcement of Frontier's promise and Manning has a valid claim for promissory

estoppel.  *See Loranger Constr. Corp. v. E.F. Hauserman Co.*, 6 Mass. App. Ct. 152, 154, 374

N.E.2d 306 (1978).

II.     **FRONTIER RELIES ON FACTS OUTSIDE THE COMPLAINT IN ASSERTING THAT FRONTIER DID NOT PROMISE TO ACT IN A SPECIFIED WAY.**

Frontier's assertion that the promises made to Manning were not made by Frontier on its own behalf rests implicitly on an understanding of Frontier's corporate relationship with Healthx that has not been explored or established at this early stage.  Frontier proceeds from a subtle assumption that it did not have the authority to hire or fire Healthx's CEO, determine whether cause existed for termination, or dictate whether severance payments required by the employment contract should be made.  The complaint alleges that Frontier—and Maclean in particular—was involved in every step of Manning's recruitment, hiring, and termination without severance.  Frontier nevertheless asks this Court to dismiss the claims against it, arguing that Frontier did not itself agree to do anything.  This assertion is factual, and relies on information not found within the complaint.

In the second paragraph of its memorandum of law, Frontier states that it "did not seek to employ [Manning], offer to employ him, or enter into any employment agreement or relationship with him and … expressed no intent to obligate itself to Manning in any way."  Document 16 at 1.  Each of these assertions is at odds with the allegations in the complaint, and is based on Frontier's narrow interpretation of Richard Maclean's communications with Manning during the recruitment process.

Frontier acknowledges that Maclean had dual roles during the relevant time period; he was both the Chairman of the Board of Healthx and Frontier's Managing Partner.  If, at all times relevant to the complaint, Maclean had appeared to act solely in his capacity as the Chairman of Healthx's Board, and if Frontier itself had no apparent role in making personnel decisions for Healthx, there would be no basis for a promissory estoppel claim against Frontier.  Those conclusions, however, are factual, and the facts are undeveloped.

Thus, Frontier's assertion that it made no promises to Manning on its own behalf ignores the possibility that Frontier controlled the process.  Given that Manning was hired for the top executive position at Healthx, it is certainly conceivable that Frontier, a private equity firm with an ownership interest in Healthx, was the ultimate decision-maker in Manning's recruitment and termination.  It is premature for the Court to reject that scenario, and Frontier's motion to dismiss asks the Court to do exactly that.

**III.**      **THERE IS EVIDENCE SUPPORTING MANNING'S ASSERTION THAT FRONTIER RECRUITED HIM AND MADE PROMISES REGARDING HIS EMPLOYMENT.**

The reason that Manning has alleged that Frontier made promises to him regarding his employment is that the communications from Maclean plainly suggest that he was acting on behalf of Frontier.  To the extent that Frontier argues that Manning cannot assert facts that would establish that Frontier, not just Maclean, was responsible for inducing him to quit his job to accept employment with Healthx, that assertion is belied by the communications Manning received throughout the process.[1]  Each of these communications at the very least made Maclean's role ambiguous, and at most could establish that Frontier controlled Healthx's executive hiring.

Early in the recruitment process, Steve Seller, the recruiter who first reached out to Manning, sent an email to Manning to correct a miscommunication regarding whether discussions should continue.  On September 14, 2013, Sellers wrote, "We are very much

---

[1] Examples of such communications are attached by way of illustration only, and solely to refute Frontier's implicit argument that its executive made no promises on behalf of Frontier, and could not have made enforceable promises on behalf of Healthx.  The allegations in the complaint are sufficient to establish the validity of a claim against Frontier, and documents outside the four corners of the complaint should not be considered in ruling on the motion to dismiss. Nevertheless, these exemplars serve to illustrate the scenario that Frontier appears to claim is impossible, namely that Fontier's executive was acting on behalf of Frontier in recruiting a CEO for its portfolio investment company.

interested in continuing discussions.  I need to catch up with the Frontier Partners to determine next steps."  *See* Exhibit 1.

On October 24, 2013, Manning received an email from Maclean—using his Frontier Capital email address and containing his Frontier Capital signature block—setting forth a "roadmap" for the process moving forward.  One of the steps identified by Maclean was a phone call "with Healthx/Frontier Capital" for Manning to share his thoughts on an action plan for the first 180 days and first year of his employment.  *See* Exhibit 2.

The December 13, 2013 offer letter that attached the employment agreement was written on Frontier Capital letterhead.  *See* Exhibit 3.  By contrast, the letter confirming Manning's termination was sent by Maclean on Healthx letterhead.  *See* Exhibit 4.  Even the email announcement to all employees of Manning being hired as President and CEO was copied to Maclean at his Frontier Capital email address, as well as another member of Frontier.  *See* Exhibit 5.  In short, it is impossible to know, without appropriate discovery, the degree to which Maclean spoke for Frontier in hiring Manning; even then, it may remain a disputed factual issue.

IV.    **FRONTIER SHOULD REMAIN A PARTY TO THE CONTRACT CLAIMS GIVEN THAT FRONTIER MAY HAVE BEEN THE CONTRACTING PARTY.**

Despite the existence of the offer letter attaching the employment agreement, the announcement that Manning had been retained as President and CEO, and the termination letter, Healthx denies that Manning had a two-year employment agreement with Healthx.  *See* Healthx's answer and counterclaims, Document 19, ¶ 30.  Both Healthx and Frontier, in their respective motions to dismiss, allude to their belief that Manning never signed the employment agreement.  If a fact-finder were to determine that Manning did not sign the employment agreement, and that it therefore did not reflect the agreement between the parties, Manning's breach of contract claim would rest on his acceptance of the terms set forth in the December 13,

2013 offer letter, and the promises made in the course of his negotiations with Maclean.  In that event, the answer to whether Maclean spoke for Frontier or Healthx—or both—during the recruitment process would dictate which entity was the proper defendant in Manning's contract claim.  Again, it is premature for the Court to make that determination at this time, without the benefit of fact discovery.  The allegations in the Complaint are sufficient to establish that both entities were responsible for the harms that Manning alleges.  The complaint against Frontier therefore should not be dismissed.

WHEREFORE, plaintiff Mark Manning requests that the Court deny Frontier's motion to dismiss and grant such other and further relief as the Court deems appropriate.  To the extent that the Court is inclined to grant the motion to dismiss, the plaintiff respectfully requests that the dismissal be without prejudice to refiling in the event that facts learned in discovery clarify that Richard Maclean acted on behalf of both Healthx and Frontier in soliciting, recruiting, hiring, and terminating the plaintiff.

Respectfully submitted,

MARK MANNING,

By his attorney,

/s/ Joshua A. McGuire
Joshua A. McGuire (BBO #651877)
The Law Office of Josh McGuire
51 Winchester St., Suite 205
Newton, MA  02461
(617) 461-6400
josh@joshmcguirelaw.com

Dated: July 13, 2015

## Certificate of Service

I hereby certify that this document was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing on July 13, 2015, and by first class U.S. mail, postage pre-paid to any non-registered participants.

/s/  Joshua A. McGuire

Joshua A. McGuire