UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 15-11936-RGS

MARK MANNING

v.

HEALTHX, INC. and FRONTIER CAPITAL, LLC

MEMORANDUM AND ORDER ON DEFENDANTS'
MOTIONS TO DISMISS

July 23, 2015

STEARNS, D.J.

Plaintiff Mark Manning brought this lawsuit on April 27, 2015, in Barnstable Superior Court. The Complaint accuses defendants Healthx, Inc., and Frontier Capital, LLC, of violating the terms of an employment offer. The Complaint alleges breach of contract (Count I), promissory estoppel (Count II), and breach of the implied covenant of good faith and fair dealing (Count III). Defendants removed the case to the federal district court on diversity grounds[1] and filed separate motions to dismiss. Healthx seeks dismissal of Count III, while Frontier seeks dismissal of all counts.

---

[1] Manning is a citizen of Massachusetts, Healthx is incorporated in Indiana, and Frontier is a North Carolina Limited Liability Company comprised of citizens of the United Kingdom and North Carolina. Notice of Removal at 1-2.

## BACKGROUND

The facts viewed in the light most favorable to Manning as the nonmoving party are as follows.  From 2005 until January 31, 2014, Manning was employed by Pegasystems, Inc., as its Vice President of Healthcare Sales.  Compl. ¶ 6.  In 2013, Manning earned over $500,000 in compensation.  *Id.*  In August of 2013, defendants recruited Manning to become President and Chief Executive Officer (CEO) of Healthx.[2]  *Id.* ¶ 7.  On November 23, 2013, they sent Manning a proposed employment agreement, which included a "renewable two-year term of employment, salary and bonus compensation, equity interest, severance, and post-employment restrictive covenants."  *Id.* ¶ 8.  On November 27, 2013, Manning was presented with a revised employment agreement, which stipulated that he could be "terminate[d] . . . at any time . . . for or without Cause."  *Id.* ¶ 9; *see* Frontier's Ex. 1.[3]  The revised agreement further stipulated that if Manning were terminated without cause, he would be entitled to six months of severance pay, but if he

---

[2] Healthx is a software company.  Compl. ¶ 2.  Frontier is a private equity firm with an ownership interest in Healthx.  Frontier's Mem. at 1.

[3] The court may weigh this exhibit on the motion to dismiss because it is referenced in Manning's Complaint.  *See Curran v. Cousins*, 509 F.3d 36, 44 (1st Cir. 2007), quoting *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993) (noting that a court may "consider 'documents the authenticity of which are not disputed by the parties'" as well as "'documents central to the plaintiff['s] claim'" and "'documents sufficiently referred to in the complaint'").

were to be terminated for "cause" (as defined in the agreement) he would receive nothing.  Compl. ¶¶ 9-11.  On December 13, 2013, Richard Maclean, the Managing Partner of Frontier and Chairman of the Board of Healthx, sent Manning a final offer letter incorporating the terms of the revised employment agreement.  *Id.* ¶ 12; Frontier's Mem. at 3.  The letter also promised Manning  "an annual salary of $375,000, a target cash bonus for 2014 of $225,000, stock options to purchase 10% of the company vesting over four years, and benefits."  Compl. ¶ 12.  The projected value of the 10% equity interest in the company four years out was approximately $7 million. *Id.* ¶ 28.  That same day, Manning accepted the offer.  *Id.* ¶ 13.

In January of 2014, Manning put up two of his Massachusetts properties for sale in anticipation of moving to Indianapolis (where Healthx is headquartered).  *Id.* ¶ 14.  He also resigned from Pegasystems, effective January 31, 2014.  *Id.* ¶ 15.  On January 18, 2014, Healthx announced that it had hired Manning as its President and CEO.  *Id.* ¶ 16.  A formal press release confirming Manning's hiring was issued on February 6, 2015.  *Id.* ¶ 18.  On February 3, 2014, Manning reported for work in Indianapolis.  *Id.* ¶ 17.  On February 10, 2014, Maclean informed Manning that he was being terminated.  *Id.* ¶ 19.  Maclean then emailed Manning a termination letter, which stated: "Given your contractual obligations to your former employer

which were not disclosed to us prior to your hire, we had no choice but to end your employment." *Id.* ¶ 20.   Manning contends that he then had no "enforceable contractual obligations to Pegasystems." *Id.* ¶ 21.   Despite the absence of "cause" for termination as defined by the employment agreement, Manning did not receive his promised severance payment.   *Id.* ¶¶ 23-24. Manning remained unemployed for several months before accepting a "lesser, non-CEO position." *Id.* ¶ 25.

## DISCUSSION

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).   Two basic principles guide the court's analysis.  "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.  "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss."  *Id.* at 679.   A claim is facially plausible if its factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere

4

conjecture, the complaint is open to dismissal." *S.E.C. v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010).

### *Healthx: Breach of the Implied Covenant*

Healthx seeks dismissal only of Manning's claim of breach of the implied covenant of good faith and fair dealing (but not dismissal of the breach of contract claim). "'Every contract implies good faith and fair dealing between the parties to it.'" *Warner Ins. Co. v. Comm'r of Ins.*, 406 Mass. 354, 362 n.9 (1990), quoting *Kerrigan v. Boston*, 361 Mass. 24, 33 (1972). Under the terms of the covenant, "neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Anthony's Pier Four, Inc. v. HBC Assocs.*, 411 Mass. 451, 471-472 (1991). Want of good faith "carries an implication of a dishonest purpose, conscious doing of wrong, or breach of a duty through motive of self-interest or ill will." *Hartford Acc. & Indem. Co. v. Millis Roofing & Sheet Metal, Inc.*, 11 Mass. App. Ct. 998, 999 (1981). In the at-will employment context, to establish a breach of the covenant, a plaintiff must demonstrate that the employer terminated him for the purpose of "'depriving [him] of money that he fairly earned and legitimately expected.'" *King v. Driscoll*, 424 Mass. 1, 7 (1996), quoting *Kravetz v.*

*Merchants Distribs., Inc.*, 387 Mass. 457, 463 (1982); *see also Fortune v. Nat'l Cash Register Co.*, 373 Mass. 96, 104-105 (1977).

Manning alleges that Healthx breached the implied covenant by "terminating [him] based upon representations made by Pegasystems without conducting appropriate due diligence to determine whether [he] was subject to any enforceable obligation that prevented him from working at Healthx, and by failing to provide [him] with an opportunity to respond to Pegasystem's allegations."   Compl. ¶ 40.   Manning alleges that he was unfairly denied the agreed severance payments and lost the opportunity to acquire an equity interest in Healthx because of defendant's bad faith.   *Id.* ¶ 41.   Healthx responds, in part, by arguing that the claim fails because Manning does not allege any "identifiable, reasonably anticipated future compensation, based on his past services." *Gram v. Liberty Mut. Ins. Co.*, 384 Mass. 659, 659 (1981).   Healthx also contends that Manning does not allege sufficient facts that would allow a reasonable fact finder to conclude that it acted in bad faith. *See York v. Zurich Scudder Invs., Inc.*, 66 Mass. App. Ct. 610, 616 (2006) (internal citations and quotation marks omitted) (bad faith cannot be established without "evidence that an employer was motivated by improper reason, even though an employee's termination may be bad, unjust, and unkind . . . , contrary to [his] reasonable expectations,

and the product of inadequate investigation."). I do not agree that, given the deferential view to which Manning's allegations is entitled, Healthx's good faith can be established as a matter of law.

The implied covenant of good faith and fair dealing is "broad enough to cover" the allegation that Healthx exercised bad faith in refusing to pay Manning the severance promised in the employment agreement without giving him an opportunity to answer the allegations made by his former employer.[4] *See Stello v. Ark Eng'g & Tech. Servs., Inc.*, 2015 WL 4254080, at *1 (D. Mass. July 14, 2015); *see also Williams v. B & K Med. Sys., Inc.*, 49 Mass. App. Ct. 563, 568 (2000) (holding that an employer's "refusal to allow the plaintiff time to respond to the accusations [that led to his termination], the insistence on limiting the severance payment, and the threat to ruin the plaintiff's career violated" the covenant of good faith and fair dealing).[5] *Compare Christensen v. Kingston Sch. Comm.*, 360 F. Supp. 2d 212, 214 (D.

---

[4] On the other hand, Manning's alleged loss of an equity interest in Healthx is not actionable, as it "do[es] not represent compensation earned but not yet paid," but rather "compensation contingent on his continued employment." *Harrison v. NetCentric Corp.*, 433 Mass. 465, 473, 476 (2001).

[5] Despite Healthx's assertion, although a denial of severance pay does not amount to "loss of compensation so clearly related to an employee's past service," *Gram*, 384 Mass. at 672 (1981), it does constitute "money that was 'fairly earned and legitimately expected.'" *Stello*, 2015 WL 4254080, at *2, quoting *King*, 424 Mass. at 7.

Mass. 2005) (dismissing plaintiff's breach of covenant claim where she had "not challenged [the defendant's] reasons for terminating the position and dismissing her.").

### Claims Against Frontier

### A. Breach of Contract

Frontier asserts that Manning's breach of contract claim fails because Manning "does not and cannot allege that Frontier was a party to and therefore bound by the" Healthx employment agreement.  Frontier's Mem. at 4.  "To state a claim for breach of contract under Massachusetts law, a plaintiff must allege, at a minimum, that there was a valid contract, that the defendant breached its duties under the contractual agreement, and that the breach caused the plaintiff damage." *Guckenberger v. Boston Univ.*, 957 F. Supp. 306, 316 (D. Mass. 1997).  The plaintiff has the burden of proving that the defaulting party failed to conform to an "essential and inducing feature of the contract." *Buchholz v. Green Bros. Co.*, 272 Mass. 49, 52 (1930).

Here, Manning's allegation that his employment contract was with Frontier does not satisfy the *Iqbal* standard.  The employment contract referenced in the Complaint clearly states:

> This Employment Agreement . . . is between HEALTHX, INC., a Delaware corporation (the "**Company**"), and Mark Manning (the "**Executive**").  For purposes of this Agreement, "Healthx" shall mean each of: (i) the Company, (ii) Healthx Holdings, Inc.,

> a Delaware corporation, (iii) Healthx Parent Corporation, a
> Delaware corporation (the "**Parent**"), and (iv) each direct and
> indirect subsidiary of any entity named in clauses (i), (ii) and
> (iii).

Frontier's Ex. 1 (emphasis in original). Frontier is mentioned nowhere in the

agreement. *Id.* The relevant signature block is clearly designated for a

representative of Healthx. *Id.* While Manning alleges that Frontier and

Healthx jointly extended the employment offer, he concedes (as he must)

that his employer was Healthx (not Frontier), and that he had "accepted

Healthx's written offer of employment." Compl. ¶¶ 8, 13. While Manning

relies on the fact that Maclean (who presented the final offer) is the

Managing Partner of Frontier, *id.* ¶ 12, as Frontier points out, Maclean is also

the Chairman of the Board of Healthx. Frontier's Mem. at 3. Of critical

importance, Manning does not allege that Frontier is an affiliate or a closely

held subsidiary of Healthx (or vice-versa).

A basic tenet of corporation common law is that corporations are

separate and distinct entities, whatever their parental or subsidiary

relationship. *See Scott v. NG U.S. 1, Inc.*, 450 Mass. 760, 766 (2008).

Massachusetts is especially strict in respecting the corporate form. *See*

*Birbara v. Locke*, 99 F.3d 1233, 1238 (1st Cir. 1996). This is true, even in the

face of run-of-the-mill allegations of inequitable conduct. *See Platten v. HG*

*Bermuda Exempted Ltd.*, 437 F.3d 118, 129 (1st Cir. 2006) ("[P]laintiffs do

not allege, and the circumstances do not lead to an inference of, any gross inequity that would argue in favor of overriding the presumption of corporate separateness."); *see also Cuming v. York Capital Mgmt.*, 2013 WL 4411230, at *5 (D. Mass. Aug. 12, 2013) (dismissing a breach of contract claim against a non-contracting defendant where "[t]he complaint [made] no allegations whatsoever about the doctrine of corporate disregard, or piercing the corporate veil, or any related theory of liability.").

## B. Implied Covenant of Good Faith and Fair Dealing

As noted previously, every contract is subject to an implied covenant of good faith and fair dealing. *Anthony's Pier Four*, 411 Mass. at 473. Where, however, there is no contract, there can be no implied covenant. *See Platten*, 437 F.3d at 129-130, quoting *Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 412 F.3d 215, 229 (1st Cir. 2005) ("'Having concluded that no contract exists, there can be no derivative implied covenant of good faith and fair dealing applicable to these parties.'").

## C. Promissory Estoppel

A plaintiff is entitled to recover in equity under a theory of promissory estoppel where despite the absence of a binding contract: "(1) a promisor makes a promise which he should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the

promisee, (2) the promise does induce such action or forbearance, and (3) injustice can be avoided only by enforcement of the promise." *Loranger Constr. Corp. v. E.F. Hauserman Co.*, 6 Mass. App. Ct. 152, 154 (1978).  Here, Manning alleges that Frontier (and Healthx) promised him a CEO position at Healthx, which he "reasonably relied" on to his "significant detriment." Compl. ¶¶ 34-35.[6]

Frontier argues that Manning has failed to identify any promise made by Frontier (or Maclean) qua Frontier.  *See Rhode Island Hosp. Trust Nat'l Bank v. Varadian*, 419 Mass. 841, 849-850 (1995), citing Restatement (Second) of Contracts § 2 (1981).  Manning's only response is to note that "Frontier provides capital and other financial support to defendant Healthx," "Frontier is an owner of and investor in defendant Healthx," and Maclean is the Managing Partner of Frontier.  Compl. ¶¶ 3, 12.   This misses the mark.

Absent a veil piercing (which is not attempted in the Complaint), the mere existence of a financial interest by one corporation in another does not make a promise of the one chargeable to the other.   *See Finbury v. Architectural Heritage Found., Inc.*, 2007 WL 4442331, at *5 (Mass. Super.

---

[6] Manning's reliance on the employment offer is not in question.  He placed two of his Massachusetts properties on the market, left his "secure and lucrative job at Pegasystems," and moved to Indianapolis, only to be terminated by Healthx within the week of his arrival.  *Id.* ¶¶ 14, 20, 34.

Nov. 19, 2007) (Plaintiffs' "factual allegations allege that McDonnell made the alleged promise on behalf of [the corporate defendant] Architectural, but nothing in the complaint suggests that McDonnell ever made any promise on his own behalf . . . ."); *see also George v. Synkinetics, Inc.*, 2013 WL 1342265, at *6 (Mass. Super. Mar. 19, 2013) ("Nowhere in the complaint does George allege that any representations or promises were made by Pasqualucci individually, as opposed to on behalf of the Company . . . .").[7]

## ORDER

For the foregoing reasons, Healthx's motion to dismiss Count III is DENIED.[8]   Frontier's motion to dismiss Counts I and III is ALLOWED. Frontier's motion to dismiss Count II is ALLOWED without prejudice to the filing of an Amended Complaint should factual circumstances warrant.

SO ORDERED.

/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE

---

[7] Maclean is not named in the Complaint in his individual capacity.

[8] While at the early stages of pleading, a plaintiff may have alternative theories of the case between actions at law and at equity, an eventual election as between the two must be made.  *See Lass v. Bank of Am., N.A.*, 695 F.3d 129, 140-141 (1st Cir. 2012).  As a rule, where a party is shown to have a remedy at law, the recourse to equity is disfavored.  *See McKesson HBOC, Inc. v. New York State Common Ret. Fund, Inc.*, 339 F.3d 1087, 1091 (9th Cir. 2003).